Corwin, J.
On the 6th day of July, a. d. 1849, the parties interchanged their separate bonds, submitting to the arbitrament of certain arbitrators therein named the claims of said Carey against said commissioners for the construction of a court house for Montgomery county. In pursuance of which submission, as modified by the subsequent agreements of the parties, the arbitrators therein ■designated met at the city of Dayton, on the first day of November, a. d. 1849, and being first sworn as such arbitrators,, commenced the discharge of their duties, and continued their investigations and deliberations, with the aid and assistance of the parties and their counsel, until the 26th day of the same month, when a majority of the arbitrators reduced to writing and signed and sealed and delivered to the parties, respectively, their award, requiring said commissioners to pay to said Carey the sum of $30,669.33, the balance found due him, and also to pay the costs of the arbitration.
At the April term of the court of common pleas of said county, a. d. 1850, Carey obtained a rule upon said commissioners to show ■cause why said submission should not be made a rule of court, and judgment be entered on the award; in answer to which, said commissioners assigned for cause : 1. A revocation by them before the .award was made. 2. That the award was not according to the submission.
The last objection seems not to have been insisted upon; but the *400 execution of the submission bond, and of the award ^having-been admitted by the defendants, the cause was heard upon the-first objection assigned, for which the rule was discharged, and judgment entered against said Carey for costs. The proceeding-having been removed to the supreme court, on certiorari, was reserved for decision in bank, where, by the decision of all the judges, the judgment of the court of common pleas was reversed.
The cause again came before the court of common pleas of Montgomery county at its November term, a. d. 1850, on a mandate and procedendo from the supreme court; where, on motion,of said commissioners, the court granted them leave and further time till the first Monday of March, 1851, to amend their showing of cause, and to file additional reasons against said rule; to which motion and ruling the said Carey objected and excepted. On the 3d day of March, 1851, said commissioner assigned as additional reasons-against said rule:
1. A revocation of submission before award made.
2. Gross misbehavior of the arbitrators.
3. Excessiveness and injustice of the award.
At the November term, a. d. 1851, the cause again came on for hearing, on the rule to show cause, and upon the amended showing against it, when Carey offered in evidence the record of the-case, embodying all the testimony before the court at the former-hearing, to which said commissioners objected. The court overruled the objection and admitted the evidence; to which ruling of the court exception was taken. And upon a full hearing of the-whole case, judgment was rendered upon said award in favor of said Carey; to reverse which judgment this writ is prosecuted.
The following errors are assigned:
1. The court erred in admitting the testimony objected to by counsel for the defendants, and in overruling the objection thereto..
2. The court erred in sustaining the motion made by plaintiff’s counsel to enter up judgment on said award, and in entering up said judgment against the defendants.
*3. Said judgment was entered in favor of the plaintiff,, when, by the law of the land, the motion should have been dismissed, and judgment given for the defendant.
It appears from the record that, upon the first hearing of this-cause, at the April term, 1850, “the plaintiff, John "W". Carey, produced the submission bond marked A, the execution and delivery *401 of which was now admitted by the defendants. The plaintiff also produced the award dated November 26, 1849, marked B, which was also read in evidence; and it was admitted by defendants that George Jewell, by counsel of parties, was substituted as an arbitrator and it also appears from the record, that “ George Jewell, being sworn, testified that on the morning of the making of the said award—viz., on the 27th day of November, 1849, about 9' o’clock a. M.—he delivered a copy of said award to Mr. Lamme, one of the commissioners, at the auditor’s office.”
The preliminary facts necessary to be proven under the twelfth section of our act “authorizing and regulating arbitrations,” were sufficiently established by the admissions of the parties and by the testimony of Jewell, all of which were made matter of record, and constituted a part of the record sent down with the procedendofrom the supreme court. And we are all of opinion that the judgment of the court of common pleas, having been reversed for an error committed at a subsequent stage of the proceedings, the cause-may be taken up by the court below at the point where the first error was committed, and proceeded with, as in other cases, to final judgment, and that it was not necessary, upon such further hearing upon procedendo, to introduce new and other proof of what was thus ascertained from the record. The proof required by said' section, like any other necessary proof, may be waived by the admissions of the adverse party; and so far as the first assignment goes, we see no error in the ruling of the court of common pleas, but think the record was properly admitted to show that these facts were already established in the case.
*But it is complained that, upon the final hearing in the court below, the new causes of objection to judgment upon the award, filed March 3,1851, were disregarded. And this leads us to consider at what time such objections must be interposed, under our statute, the eleventh section of which is in these words :
“That if any legal defects appear in the award, or other proceedings, or if it shall be made to appear, at the term of the court at j which said award and arbitration bond are entered in said court, on I oath or affirmation, that said award or umpirage was obtained by ■ fraud, corruption, or other undue means, or that said arbitrators or umpire misbehaved, said court may set aside such award or umpirage, or make such order thereon as may be just and right.”
This section admits of but one reading. Although defects ap *402 parent in the award or other proceedings may be taken advantage ■of at any time before final judgment, yet, to authorize the court to ■set aside the award, on account of any of the extrinsic causes of ■objection specified in the section, they must be made to appear, on ■oath or affirmation, at the term of the court to which the award ¡and arbitration bond are entered. These new causes of Objection never were interposed “upon oath or affirmation,” as the statute requires they shall be done, before the court can have power to act upon them ; and were not only not “ made to appear at the term of the court to which the award and arbitration bond were entered,” but were not presented until after the party had made his defense, and the litigation thereon had been carried to the court •of last resort, and finally decided. If a new defense might thereafter be allowed, and the judgment of the court of common pleas were here again reversed, another defense might again be set up, and thus the litigation be made interminable, the beneficent policy of our arbitration would be effectually defeated, and its plainly expressed provisions clearly violated. We think, therefore, that the court of common pleas committed no error in refusing to discharge the rule on account of the new reasons filed *after the cause had been sent back on procedendo. And this construction of the ¡statute renders it wholly unnecessary to consider the testimony by which those reasons are sought to be supported.
The only remaining question arises upon the cause first assigned ¡against the rule, to wit, that, before the award was made, the submission was revoked by said commissioners. This precise question was decided in a case between the same parties, 19 Ohio, 245, where it was held “ that the right to revoke the submission did not ■exist when the attempt was made to exercise it; ” and we see no reason to depart from the construction of our statute adopted by the court in that case. Here, the parties had fully and fairly submitted their controversy to arbitration under the statute; all the proofs and arguments had been fully and patiently heard; the deliberations of the arbitrators had been continued for nearly one month, and an award had been substantially agreed upon ; and then the commissioners of the county were secretly informed by •one of the arbitrators of the conclusions to which a majority of the board had arrived. A deed of revocation was made out by the •■commissioners, and placed in the hands of the auditor, who was mot to serve the same, and did not serve it, until an attempt was *403 made to induce the arbitrators to change the award, and until he was notified by the minority that they could not get the award to .suit them.
To allow a revocation by one party, at such a time, and under •such circumstances, instead of accomplishing the object of an arbitration law—the speedy and final adjustment of the controversies of parties, by a tribunal amicably constituted for that purpose— would make it a mere means of mischief, trickery, and fraud. We are entirely satisfied with the ruling of our predecessors in the ■case above referred to, and the judgment of the court of common pleas is therefore affirmed, with costs.
Banney, J., and Thurman, J., dissented upon the last point.

Judgment affirmed.